**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

ANTHONY SMITH,                              :

                           Case No. 3:09-cv-422

        Plaintiff,

                           District Judge Walter Herbert Rice
                           Magistrate Judge Michael R. Merz

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.          :

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on June 6, 2002, alleging disability from June 1, 2002, due to Asperger Syndrome. (Tr. 69-70; 96). The Commissioner denied Plaintiff's application initially and on reconsideration. *See,* Tr. 36-37. Administrative Law Judge Daniel Shell held a hearing (Tr. 421-76), and subsequently determined that Plaintiff was not disabled. *See,* Tr. 38-40. The Appeals Council granted Plaintiff's request for review and remanded the matter for further proceedings. (Tr. 66-68). On remand, Judge Shell held a hearing, (Tr. 387-420), and again determined that Plaintiff is not disabled. (Tr. 8-10). The Appeals Council denied Plaintiff's request

for review, (Tr. 4-6), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that Plaintiff has severe history of alcohol and drug abuse, a personality disorder, adult attention deficit disorder with features of Asperger Syndrome, auditory expressive-receptive learning disorder, and bipolar disorder, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 14, ¶ 2; 15, ¶ 3). Judge Shell also found that Plaintiff has the residual functional capacity to perform work at any exertion level except that he cannot be subjected to strict production standards, that he cannot perform work that requires close supervision or teamwork or work that is complex, that he is limited to simple work although he can perform detailed work, and that he must have a demonstration of work assignments and written rather than verbal instructions. (Tr. 16, ¶ 4). Judge Shell then used section 204.00 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 19, ¶ 9). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 20).

Plaintiff, whose date of birth is August 4, 1970, (Tr. 69), has a history of mental impairments dating back to his early childhood. *See,* Tr. 129-30.

The record contains a copy of treating child psychiatrist Dr. Mitchell's treatment notes dated September 25, 1979, through September 21, 1981. (Tr. 319-36). Those notes reveal that Dr. Mitchell recommended that Plaintiff be hospitalized for further evaluation, that Plaintiff was hospitalized for four months for psychiatric evaluation and care, and that Dr. Mitchell continued to treat Plaintiff after that hospitalization. *Id.* Dr. Mitchell's notes also reveal that Plaintiff reported experiencing auditory hallucinations and that Plaintiff's teachers reported that he was doing better

in school. *Id.* Dr. Mitchell's notes further reveal an evaluator for a treatment program in Cincinnati determined that Plaintiff's family had too many problems and therefore the evaluator concluded that Plaintiff would not be accepted for treatment in that program. *Id.* However, Dr. Mitchell's notes reveal that in July, 1980, Plaintiff was admitted to St. Joseph Home for Children, a residential treatment home in Dayton, where he remained for eighteen months. *Id.* Dr. Mitchell reported that Plaintiff had made some progress while being treated at the St. Joseph facility. *Id.* Over time, Dr. Mitchell identified Plaintiff's diagnosis as sociopathic personality, a psychosis with auditory hallucinations, a neurosis which was primarily depression, and a personality disorder which was mostly obsessive and negativistic. *Id.*

On June 13, 1986, treating child psychiatrist Dr. Yacona reported that Plaintiff had been hospitalized for psychiatric treatment from February 13 through June 9, 1986, that when he was admitted he had multiple symptomatology highlighted by aggressive behavior, negative self-image, a low frustration tolerance, family problems, depression, and impulsivity, that he was unable to control his behavior, and that he would strike out physically at anyone he considered the aggressor. (Tr. 163). Dr. Yacona also reported that Plaintiff had a combination of disorders including attention deficit disorder and a temporal lobe dysfunction and that he was treated with medications. *Id.*

On November 20, 2000, Plaintiff's family brought him to a hospital emergency room because they suspected he may have attempted to commit suicide by drinking beer and taking his mother's sleep medication. (Tr. 348-58). It was noted at the time of Plaintiff's admission to the emergency room that he denied taking medication, he was depressed about his grandfather's recent death, his drug screen was positive only for marijuana, and his alcohol level was 117 [sic]. *Id.* Plaintiff was treated and released with the diagnoses of situational stress and depression. *Id.*

Plaintiff was evaluated at Crisis Care at Good Samaritan Mental Health Services on December 2, 2000. (Tr. 164-83). At the time that Plaintiff was evaluated, it was noted that he reported that he needed something to help him focus, that he did not have a drinking problem, that he stopped drinking two weeks ago, that prior to that he was drinking six to ten beers every night, and that he had one beer the evening before the evaluation. *Id.* It was also noted that Plaintiff was oriented, displayed normal movements, had normal speech, his affect was blunted, his mood was somewhat depressed, and that his attitude was somewhat guarded. *Id.* Plaintiff's diagnoses were identified as major depression, recurrent and moderate, generalized anxiety disorder, and alcohol abuse and he was assigned a GAF of 45. *Id.* Plaintiff was referred for outpatient mental health treatment. *Id.*

Plaintiff was again evaluated at Crisis Care in May, 2002. (Tr. 213-33). At that time, Dr. Calderon, the psychiatrist who evaluated Plaintiff noted that Plaintiff had a long psychiatric history and that his parents first sought help for him when he was three years old. *Id.* Dr. Calderon also noted that Plaintiff's mood was irritable, he displayed paranoia, had poor socializing skills, had obsessive-compulsive traits, and that he reported difficulty keeping a job. *Id.* Dr. Calderon identified Plaintiff's diagnoses as Asperger Syndrome and anxiety disorder and he assigned Plaintiff a GAF of 55. *Id.* Subsequently, Plaintiff expressed the desire to get treatment at South Community and because that facility was not taking new patients, he was referred to Eastway for mental health services. *Id.*

Plaintiff was hospitalized June 26 -29, 2002, after he had been drinking and taking "street drugs". (Tr. 193-212). In the emergency room, Plaintiff was respirator-dependent and he was admitted to the hospital for further treatment. *Id.* The emergency room physician noted that

Plaintiff's drug screen was positive for cocaine and benzodiazepines, and that his alcohol level was .8. *Id.* During that hospitalization, it was noted that Plaintiff reported that he had been drinking a twelve-pack of beer daily for the past ten years, that he drank everyday, had been taking drugs since age twenty-four, that he could not afford cocaine but that he friend had it, that he was "tattooed severely", and that he was alert and oriented. *Id.* Plaintiff was treated and released with the diagnoses of respiratory failure, cocaine abuse, alcohol abuse, drug-induced organic affective syndrome, poisoning by antidepressant, toxic effect of ethyl alcohol, bipolar affective disorder, unspecified, antisocial personality disorder, tobacco use disorder, major depressive affective disorder, single episode, unspecified, suicide attempt and self-inflicted poisoning by sedative/hypnotic, suicide attempt and self-inflicted poisoning by tranquilizer/psychotropic agent, and suicide attempt and self-inflicted poisoning by unspecified solis/liquid substance. *Id.*

Examining psychologist Dr. Mary Ann Jones noted on October 17, 2002, that Plaintiff attended school to the eleventh grade, had significant behavior problems in school, earned a GED, that he reported that he tried drugs but never has been really involved, engaged in "just drinking", had been incarcerated for drug possession, felonious assault, and criminal trespassing, and that he was currently seeing Dr. Calderone at Crisis Care. (Tr. 257-62). Dr. Jones also noted that Plaintiff did not display any signs of intoxication, his facial expressions were anxious, he was fidgety and restless, was cooperative, and that his thought association proved primarily circumstantial. *Id.* Dr. Jones reported that Plaintiff's presenting demeanor was resigned, his affect was blunted, he described his mood as depressed, he was preoccupied with his symptomatology and evidenced some general confusion, and that he presented as distracted to vague with regard to his degree of consciousness. *Id.* Dr. Jones also reported that Plaintiff was mildly evasive, presented

7

with sufficient information, judgment, and common sense reasoning ability to live independently, to make important decisions, and to manage his own funds, and that he was not motivated to participate in ongoing mental health treatment. *Id.* Dr. Jones reported further that testing revealed that Plaintiff's verbal IQ was 90, his performance IQ was 104, and his full scale IQ was 95, that he fell in the average range of intelligence, attention span, and rote memory and in the borderline range in concentration, and that he achieved a reading comprehension level equivalent to the mid-fifth grade level which was considered functionally literate. *Id.* Dr. Jones opined that Plaintiff's abilities to understand, remember, and follow instructions and to tolerate the stress and pressure associated with day-to-day work activity were moderately impaired, and that his ability to maintain attention, concentration, persistence, and pace to perform simple repetitive tasks was mildly to moderately impaired. *Id.*

On November 18, 2004, at Judge Shell's request, Dr. Buban reviewed Plaintiff's file and then reported that Plaintiff had behavioral difficulties as a child with the diagnosis of rule out childhood schizophrenia, he has had hospitalizations, jail time, and frequent job changes, and that his diagnoses include ADD, organic dysfunction, major depression recurrent and moderate, generalized anxiety disorder, alcohol abuse, possible bipolar disorder, and Asperger disorder. (Tr. 369-70). Dr. Buban also reported that Plaintiff's continuing drinking and abusing drugs severely limited the effectiveness of any treatment or medication and that he had to be sober for a period of time before an accurate diagnosis could be made. *Id.*

The record contains a copy of Plaintiff's treatment notes from his mental health counselor dated July 29, 2005, to April 10, 2006. (Tr. 380-86). Those notes reveal that when the counselor first evaluated Plaintiff he reported that Plaintiff was anxious, was of average intelligence,

8

displayed no evidence of psychosis, and that he was attending cosmetology school. *Id.* Plaintiff's counselor noted that Plaintiff reported he did not drink alcohol very much and did not use drugs although he had used cocaine, marijuana, ecstasy, and catamine in the past, and that he had not been suicidal for about three years. *Id.* The counselor identified Plaintiff's provisional diagnosis as ADD and he assigned Plaintiff a GAF of 60. *Id.* The counselor's notes reveal that Plaintiff received treatment about every three to four weeks. *Id.*

At his counselor's request, Plaintiff was evaluated by neuropsychologist Dr. Flexman who reported on March 4, 2006, that Plaintiff was currently attending barber school but not doing well, had a history of being involved in a residential treatment program, was seeing a counselor on a regular basis, admitted to using a little alcohol but denied a history of alcohol abuse, and that he had a history of marijuana and cocaine use. (Tr. 376-79). Dr. Flexman also reported that Plaintiff's posture was tense, he displayed no gait disturbances, his facial expressions were anxious, his general body movement were restless and fidgety, his speech was normal, he displayed no overt pain behavior, his affect was negative, and his attitude was anxious. *Id.* Dr. Flexman reviewed Plaintiff's history including developmental information which Plaintiff's mother provided and administered several tests to Plaintiff. *Id.* Dr. Flexman then opined that the results of his brief neuropsychological cognitive examination of Plaintiff revealed that he was experiencing several difficulties including an auditory expressive receptive learning disability, a combined type attention deficit disorder, and bipolar disorder. *Id.* Dr. Flexman opined that Plaintiff would benefit from treatment with medications as well as continued counseling. *Id.*

Dr. Buban testified as a medical advisor (MA) at the hearing Judge Shell held on remand from the Appeals Council. (Tr. 408-17). Dr. Buban testified that it was difficult to say that

Plaintiff met a listing because there was such limited follow through [with recommendations for treatment with medications] and that there was an open question as to Plaintiff's alcohol and drug use. *Id*. Dr. Buban also testified that Plaintiff was limited to jobs that do not involve strict production quotas, strict time standards, or close team work, that he should be left to complete his tasks in an independent fashion, that he could perform simple and complex tasks, and that rather than verbally receiving instructions, Plaintiff should be shown how to do a task as well as maybe have written instructions. *Id.*

Plaintiff's mother testified at the first hearing that as a very little child, Plaintiff was destructive and unable to play with other children, that as an older child he had problems with setting fires, stealing, and beating other children, and that as an adult, he would try to get jobs, would eventually get one, but that he would be home by noon and state that he "couldn't–they were watching me ...". (Tr. 449-59). Plaintiff's mother also testified that at times, she thought that Plaintiff needed to be institutionalized. *Id.*

Plaintiff's father testified at the first hearing that Plaintiff tried to work and maintain a job but that "his condition just prevents him from doing the, the socialization I think that's required ... to put up with people on the job, whether it's coworkers or bosses or following routine." (Tr. 463-66.

In his Statement of Errors, Plaintiff alleges that the Commissioner erred by ignoring certain evidence and by improperly evaluating his psychological symptoms. (Doc. 7).

In support of his first Error, Plaintiff argues that the Commissioner erred by ignoring evidence of his "multiple hospitalizations and institutionalizations as a child and adolescent, and the testimony of [his] parents concerning his work history".

10

A review of Judge Shell's decision reveals that, contrary to Plaintiff's argument, he recognized that Plaintiff has "a history of hyperactivity, behavioral problems, and learning difficulties since the claimant was very young." (Tr. 14). In addition, Judge Shell specifically addressed treating child psychiatrist Dr. Yacona's 1986 report. *Id.* Finally, Judge Shell summarized Plaintiff's parents' testimony with respect to Plaintiff's long-standing psychological problems. (Tr. 17).

Plaintiff's position seems to be that the evidence of his childhood difficulties which are reflected by the evidence of his early difficulties as well as by his parents' testimony somehow establishes that he is now disabled. However, Plaintiff has failed to explain how evidence that is twenty and more years old is more relevant to his current ability to perform substantial gainful activity than is the contemporary evidence which the record contains. To the extent that Plaintiff is arguing that he has had long-standing mental health problems, as noted above, Judge Shell clearly recognized that Plaintiff's problems have dated back to early childhood.

Plaintiff raises several arguments in support of his second Error including arguments that the Commissioner failed to properly consider his symptoms and his credibility, that he selectively chose Dr. Flexman's to discuss, and that he (Plaintiff) has failed to follow through with further recommended treatment because he is not aware of the severity of his condition.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded. *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and*

*Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

Judge Shell determined that while Plaintiff's impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible because they were inconsistent with the medical evidence of record. (Tr. 17-18). Judge Shell then discussed in detail the medical evidence on which he was relying in rejecting Plaintiff's subjective complaints and allegations. (Tr. 18-19). The question is, of course, whether Judge Shell's conclusion is supported by substantial evidence.

As Judge Shell noted, Dr. Jones opined that Plaintiff would have difficulty following detailed verbal instructions, that he is, at worst, moderately impaired in his abilities to perform work-related activities. In addition, Dr. Flexman reported that Plaintiff should be able to control his symptoms with medication and counseling, a recommendation that Plaintiff admits he has not followed. Moreover, Dr. Buban testified that Plaintiff is, at worst, limited to jobs that do not involve strict production quotas, strict time standards, or close team work, that he should be left to complete his tasks in an independent fashion, that he could perform simple and complex tasks, and that rather than verbally receiving instructions, and that he should be shown how to do a task as well as perhaps have written instructions. Finally, the reviewing mental health experts opined that, with the exception of a marked impairment in his ability to interact with others, Plaintiff is, at worst, moderately limited in his abilities to function. (Tr. 264-81; 285-301). Indeed, not one mental health expert of record including any treating experts, has opined that Plaintiff is disabled by his alleged

12

mental impairments.

Under these facts, the Commissioner did not err by finding that Plaintiff's subjecting complaints and allegations were not entirely credible.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

December 9, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record

13

at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).